IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BANK OF NEW YORK MELLON,                    Case No. 3:14-cv-02051-AA
                                                 OPINION AND ORDER
            Appellant,

     v.

NICOLAS LEE WATT & PATRICIA
MOUDY WATT,

            Appellees.
———————————————————————

Crystal S. Chase
Oren B. Haker
Stoel Rives LLP
900 S.W. 5th Avenue, Suite 2600
Portland, Oregon 97204
      Attorneys for appellant
      Bank of New York Mellon

Michael D. O'Brien
Michael D. O'Brien & Associates PC
12909 S.W. 68th Parkway, Suite 160
Portland, Oregon 97223
      Attorney for appellees
      Nicolas and Patricia Watt

Britta E. Warren
Black Helterline, LLP
805 S.W. Broadway, Suite 1900
Portland, Oregon 97205
      Attorney for appellees
      Meritage Homeowners' Association

C. Anthony Crnic , III
Klatt, Augustine, Sayer, Treinen & Rastede, PC
6th Avenue, Suite 1015
Des Moines, Iowa 50309
      Attorney for amicus curiae
      American Legal and Financial Network

PAGE 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Bank of New York Mellon, as trustee for certificate holders of the CWALT, Inc., alternative loan trust 2006-OA21, mortgage pass-through certificates series 2006-OA21 ("BNYM"), appeals the bankruptcy court's confirmation of Nicolas and Patricia Watt's ("debtors") Chapter 13 plan. For the reasons set forth below, the bankruptcy court's decision is vacated and this case is remanded for further proceedings.

## BACKGROUND

In November 2006, debtors took out a loan, in the amount of $296,940, to purchase a second residence in Newport, Oregon ("Property"), which is one of eighteen townhouse units within a planned community that is subject to a series of covenants and restrictions enforced by Meritage Homeowners' Association ("Meritage"). Excerpt of Record ("ER") 19-48, 70. Pursuant to this transaction, debtors executed a promissory note ("Note") in favor of Mortgage Trust, Inc. ("MTI"). ER 19-23, 39-48. The Note was secured by a deed of trust ("DOT"), which lists MTI as the lender, Western Title and Escrow as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS"), as the beneficiary. ER 25-38. The DOT was duly recorded in Lincoln County, Oregon. ER 25.

In April 2012, MERS assigned MTI's interest in the DOT to BNYM. ER 50. This assignment was recorded in the official records of Lincoln County. Id. At some unspecified time in 2012, debtors stopped making the requisite loan repayments, thereby materially defaulting under the Note and DOT, such that BNYM commenced

PAGE 2 - OPINION AND ORDER

preliminary foreclosure proceedings. ER 88-89, 122. Coterminous with or subsequent to that default, debtors incurred a significant amount of assessments leveraged by Meritage as a result of their failure to repair defective windows and pay homeowners' association ("HOA") fees. ER 70-72.

On March 12, 2014, debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code.[1] ER 122. By operation of law, debtors' Chapter 13 petition stayed BNYM's foreclosure efforts. ER 122; 11 U.S.C. § 362. At that time, the Property was subject to several liens. Specifically, the DOT, held by BNYM,[2] created a secured first-position lien on the Property; the total amount owing under the Note was greater than $346,000. ER 71-72. Meritage's unpaid assessments and fines formed an automatic lien under Oregon law, subordinate to the DOT. ER 72; Or. Rev. Stat. § 94.709(1)(b).

---

[1] This chapter of the Bankruptcy Code enables individuals with regular income to develop a plan to repay all or part of their debts over time. See, e.g., 11 U.S.C. § 1322(a); see also In re Harris, 757 F.3d 468, 480 (5th Cir.), cert. granted, 135 S.Ct. 782 (2014) (Chapter 13 bankruptcy effectuates a "quid pro quo" relationship between creditors and the debtor). Accordingly, debtors here have ongoing income and a primary residence; this bankruptcy pertains solely to debt incurred in relation to the Property. ER 53-58, 69-72, 121-33.

[2] The parties stipulated to certain facts before the bankruptcy court, including that "[t]he current owners of the Note are the Certificateholders of CWALT [for whom the BNYM] is the trustee." ER 71. Nevertheless, debtors imply on appeal that BNYM is not the current holder of the Note and DOT because those "documents . . . do not mention [BNYM] at all." Debtors' Opening Br. 2. Debtors' assertion ignores the fact that MTI effectuated an assignment of the DOT to BNYM. ER 50. Regardless, for the purposes of this appeal, the Court accepts BNYM as the owner of the Note and DOT, irrespective of the ambiguity surrounding mortgage instruments designating MERS as the beneficiary.

PAGE 3 - OPINION AND ORDER

Further, Bank of America, N.A., possessed a $34,000 consensual lien. ER 72. Finally, Meritage held a judgment lien against the Property in the amount of $225,000. Id. As such, the value of the Property did not exceed the value of the secured claims. ER 71, 124.

On April 1, 2014, debtors proposed their initial plan, which advanced "selling the Property pursuant to 11 U.S.C. § 363(b)," as well as surrendering the Property to creditors with secured claims. ER 1-4. Meritage objected to this plan on the ground that it sought to discharge debtors' obligation to pay post-petition HOA assessments and fines.[3] BNYM's Opening Br. 4-5 (citation omitted). On April 23, 2014, debtors amended their initial plan, but without addressing Meritage's objection. ER 5-9. As such, Meritage filed a substantively identical opposition to debtors' amended plan. BNYM's Opening Br. 5 (citation omitted).

On June 17, 2014, BNYM moved for relief from the automatic stay to enable it to pursue its remedies under the Note and DOT. ER 10-52. On June 30, 2014, debtors filed a second amended plan. ER 53-58. This plan no longer proposed the sale and surrender of the Property; instead, debtors added a nonstandard provision pursuant to which they planned to vest the Property in BNYM under 11 U.S.C. § 1322(b)(9) upon confirmation. ER 58. That same day, debtors filed a response to BNYM's motion for relief from stay, in which they

---

[3] As the bankruptcy court observed, "the majority of [debtors'] household income is from retirement accounts, which would be exempt from execution if Meritage did seek to recover post-petition assessments." ER 129.

PAGE 4 - OPINION AND ORDER

argued that the stay should remain in place in light of their second amended plan. ER 60.

On July 31, 2014, BNYM objected to the second amended plan on the grounds that confirmation thereof would force it to take title to the Property "subject to the junior liens [and] be obligated on the [post-petition HOA] dues and assessments." ER 65. In other words, BNYM asserted that 11 U.S.C. § 1325(a)(5) was the exclusive statutory provision concerning confirmation of Chapter 13 plans and that the requirements listed therein could not be enlarged by other provisions of the Bankruptcy Code, including 11 U.S.C. § 1322(b)(9). ER 64-68. On August 28, 2014, a hearing was held before the bankruptcy court, wherein BNYM reiterated its objection to debtors' second amended plan. ER 73-120.

On October 15, 2014, the bankruptcy court issued a memorandum opinion and order confirming the second amended plan and granting BNYM's motion for relief from stay. ER 121-33; see generally In re Watt, 520 B.R. 834 (Bankr.D.Or. 2014). The bankruptcy court first recognized that, "in this post-2007 world, debtors may find themselves in a position where lenders are reluctant to foreclose on their collateral [and, because] surrender alone does not divest them of ownership[,] [they] remain liable for post-petition HOA assessments." ER 125. Further, the bankruptcy court noted that 11 U.S.C. § 1322(b)(9) allowed a debtor to include a provision in a bankruptcy plan vesting the property of the estate in a secured creditor. ER 126. The bankruptcy court then acknowledged that two recent cases involving analogous circumstances - In re Rosa, 495

PAGE 5 - OPINION AND ORDER

B.R. 522 (Bankr.D.Haw. 2013), and <u>In re Rose</u>, 512 B.R. 790 (Bankr.W.D.N.C. 2014) - held that a secured party could not be required, against its will, to take title to property surrendered in a bankruptcy proceeding. ER 126-27.

Nevertheless, the bankruptcy court "s[aw] no prohibitions to allowing [d]ebtors to both surrender the Property and vest it" in BNYM:

> I respectfully disagree with both the <u>Rose</u> and the <u>Rosa</u> courts [because they] took the position that § 1322(b)(9) could not be used to compel a lender to accept title to its collateral without its consent [but] nothing in the language of § 1322(b)(9) requires such consent. In the absence of such language, I find that a plan which provides for vesting of property in a secured lender at time of confirmation may be confirmed over the lender's objection. However, such a plan must still comply with the provisions of section 1325(a)(5) with respect to payment of secured claims . . .
>
> In <u>Rosa</u>, the court held that the third standard - surrender - did not fully validate the debtor's plan, because the debtor proposed vesting in addition to surrender [but the <u>Rosa</u> court] failed to explain why the act of vesting eliminated surrender as a proper treatment of a secured claim. Nor do I see any reason why it would do so . . .
>
> [BNYM] resists taking title and surrender but yet seeks relief from the automatic stay to foreclose at an undeterminative date with no commitment to moving forward. [BNYM] did not offer to waive its security and be treated as an unsecured creditor [thereby] creat[ing] a stalemate. This hurts more than [d]ebtors [and] Meritage. It affects all the homeowners in Meritage [pursuant to Or. Rev. Stat. §] 94.723.[4]

---

[4] This statute specifies that, "[i]f a first mortgagee acquires a lot in a planned community by foreclosure or deed in lieu of foreclosure, the mortgagee and subsequent purchaser shall not be liable for any of the common expenses chargeable to the lot which became due before the mortgagee or purchaser acquired title to the lot. The unpaid expenses shall become a common expense of all lot owners including the mortgagee or purchaser."

PAGE 6 - OPINION AND ORDER

ER 127-30 (internal citations, brackets, and quotations omitted). Accordingly, the bankruptcy court approved the second amended plan, but ordered debtors to "amend [it] by interlineation to make clear that [they] are surrendering the Property and that entry of the Order has no effect on the relative priority or extent of the liens against the Property." ER 130. BNYM now appeals the bankruptcy court's decision. ER 134-41.

## STANDARD OF REVIEW

On appeal from the bankruptcy court, the district court independently reviews findings of fact for clear error, while conclusions of law are reviewed de novo. <u>Barrientos v. Wells Fargo Bank, N.A.</u>, 633 F.3d 1186, 1188 (9th Cir. 2011) (citation omitted).

## DISCUSSION

BNYM argues on appeal that the bankruptcy court erred as a matter of law in confirming debtors' Chapter 13 plan because it did not meet any of the three requisite criteria listed in 11 U.S.C. § 1325(a)(5). Conversely, debtors contend that "the substantive rights given to them by Congress under § 1322(b) are balanced with and not supplanted by the substantive obligations imposed on them by § 1325(a)," such that these provisions should be read together to allow the vesting of property in a non-consenting secured creditor. Debtors' Opening Br. 10.

I.    <u>Legal Overview</u>

The filing of a bankruptcy petition under Chapter 13 creates a bankruptcy estate comprised of all of the legal and equitable interests owned by the debtor as of the commencement date, plus

PAGE 7 - OPINION AND ORDER

certain assets accrued post-commencement, until the case is closed, dismissed, or converted. 11 U.S.C. §§ 541, 1306. Following confirmation of a plan, the property of the estate "vests" to the debtor, typically free and clear of any claim or interest previously held by creditors. 11 U.S.C. § 1327. Nevertheless, where a Chapter 13 debtor owns real property that is encumbered during the post-petition period by HOA dues and fees, the debtor's liability for such dues and fees continues as long as he or she retains an interest in that property. In re Foster, 435 B.R. 650, 661-62 (B.A.P. 9th Cir. 2010); Or. Rev. Stat. § 94.712(1).

The debtor bears the burden of establishing, "by a preponderance of the evidence," that his or her proposed plan satisfies the requirements of the Bankruptcy Code and is appropriate for confirmation. In re Lavilla, 425 B.R. 572, 576 (Bankr.E.D.Cal. 2010) (citations omitted). The contents of a Chapter 13 bankruptcy plan are regulated by 11 U.S.C. § 1322. Subsection (a), which is not at issue here, dictates what a plan "shall provide." 11 U.S.C. § 1322(a). Subsection (b) includes a list of permissive terms that "may" be included. 11 U.S.C. § 1322(b). In relevant part, subsection (b) specifies that "the plan may . . . provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." 11 U.S.C. § 1322(b)(9).

The confirmation of a Chapter 13 bankruptcy plan is governed by 11 U.S.C. § 1325. In re Andrews, 49 F.3d 1404, 1407 (9th Cir. 1995). The bankruptcy court "shall confirm a plan" only if, with

PAGE 8 - OPINION AND ORDER

respect to each allowed secured claim, one of the following three
requirements are satisfied: (1) "the holder of such claim has
accepted the plan;" (2) the debtor's payments to the creditor
comply with certain standards and the creditor retains its lien; or
(3) "the debtor surrenders the property securing such claim to such
holder." Id. at 1407-08 (citations and internal quotations
omitted); 11 U.S.C. § 1325(a)(5).

The Bankruptcy Code does not define the terms "surrender" or
"vesting" for the purposes of Chapter 13. Nonetheless, "surrender"
has been interpreted in this context as the debtor's relinquishment
of his or her right to the property at issue, such that the secured
creditor is free to accept or reject that collateral. Rosa, 495
B.R. at 523 (citation omitted); see also In re Arsenault, 456 B.R.
627, 629-30 (Bankr.S.D.Ga. 2011) ("surrender of encumbered property
leaves the secured creditor in control of the exercise of its
remedies") (citation and internal quotations omitted). Accordingly,
where the offered collateral is part of a planned community
regulated by a HOA, "surrender alone does not cut off the debtor's
liability for association fees." Rosa, 495 B.R. at 523; ER 124-25.

Unlike surrender, "vesting . . . includes a present transfer
of ownership." Rosa, 495 B.R. at 524; see also In re Gonzales, 512
B.R. 255, 259-61 (Bankr.C.D.Cal. 2014) (although "there is very
little case law discussing the meaning and impact of the vesting,"
it generally allows the debtor or other specified party, upon plan
confirmation, to "take whatever property rights [the debtor] had in
the property when the case commenced"). Thus, vesting is the

mechanism that, in the context of real property, transfers title and, by extension, terminates the debtor's liability for post-petition HOA assessments.

II. <u>Analysis</u>

Initially, it is undisputed on appeal that, consistent with the bankruptcy court's decision, debtors were permitted to vest the Property in BNYM via their Chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(9), provided that it otherwise complied with 11 U.S.C. § 1325(a)(5). ER 127-29; Debtors' Opening Br. 5; BNYM's Opening Br. 10; <u>see also</u> Meritage's Opening Br. 6-7 ("the vesting provision found in section 1322(b)(9) is not without limitations devised by Congress; it remains subject to the laundry list of confirmation requirements found in sections 1322(a) and 1325(a)"). As such, the parties are in agreement that: (1) 11 U.S.C. § 1325(a)(5) exclusively controls whether a plan is confirmable; and (2) 11 U.S.C. § 1322(b)(9) is the mechanism that allows a bankruptcy court to alter the default presumption embedded in 11 U.S.C. § 1327 regarding when and with whom the property of the estate vests.

It is also undisputed that 11 U.S.C. § 1322(b)(9) does not list consent as a prerequisite of vesting. ER 127-29; Debtors' Opening Br. 5; BNYM's Opening Br. 23. Additionally, neither party asserts, and nor does the Court find, that the first or second permitted treatments enumerated in 11 U.S.C. § 1325(a)(5) apply in the case at bar. <u>See generally</u> Debtors' Opening Br.; BNYM's Opening Br.; <u>see also</u> ER 64-68 (BNYM's objection to debtors' second amended plan). This case therefore turns on whether a plan is confirmable

PAGE 10 - OPINION AND ORDER

under the third prong when the debtor proposes surrender in addition to a nonstandard provision, such as vesting, and the secured creditor opposes the inclusion of that nonstandard term.

The Court answers this question in the negative, such that reversal of the bankruptcy court's decision is required. Essentially, the bankruptcy court interpreted 11 U.S.C. § 1322(b)(9) as creating a "fourth option" under 11 U.S.C. § 1325(a)(5). ER 79, 124-30. This holding, however, is at odds with both the plain language of 11 U.S.C. § 1325(a)(5) and established precedent. As BNYM denotes, "section 1322(b) does not state that a plan that includes any of these provisions is per se confirmable [and this is because] [c]onfirmation is governed by section 1325, not section 1322." BNYM's Opening Br. 10; see also Am. Legal & Fin. Network Amicus Br. 5 (bankruptcy court's decision "opened the door to allow Chapter 13 plans to be confirmed without meeting the requirements of 11 U.S.C. § 1325(a)(5)"). In other words, that "section 1322(b)(9) permits inclusion [of a nonstandard provision that vests property in a secured creditor does not resolve] whether the plan can be confirmed with the nonstandard provision." Rosa, 595 B.R. at 524.

The third option specified in 11 U.S.C. § 1325(a)(5) unambiguously states that a plan is confirmable solely where surrender is proposed. 11 U.S.C. § 1325(a)(5)(C). Here, debtors' second amended plan did not merely propose the cessation of their interest in the Property, it also forcibly transferred that interest, and the attendant liabilities, to BNYM. ER 58, 133; see

PAGE 11 - OPINION AND ORDER

<u>also</u> BNYM's Reply Br. 5 ("[t]o vest and surrender are not synonymous [such that had] Congress intended to allow a debtor to 'vest' ownership of property to a secured creditor over its express objection [it] could have done so [but chose] not to"). The attendant liabilities in this case are substantial and ongoing. <u>See, e.g.</u>, ER 98 (BNYM articulating at the hearing that "[t]he issue here, frankly, is that we're stepping into a minefield of liability, and we have no control over how the [other secured creditors] will act going forward"). These are precisely the type of circumstances that courts find determinative in holding that a secured creditor cannot be compelled to take title to collateral over its objection. <u>See Rose</u>, 512 B.R. at 795-96 ("[f]orcing a lender to take title to property would open a pandora's Box of unintended, injurious consequences . . . First, and obviously, [it] causes [the lender] to assume burdens of ownership for which it did not contract . . . The potential for personal liability also exists if the collateral property is dilapidated, damaged," or "subject to multiple encumbrances, [including] accrued HOA obligations"); <u>Rosa</u>, 495 B.R. at 525 ("the mortgagee may have legitimate reasons to object [to accepting title such as where the] property [is] a liability rather than an asset [because it is] subject to exorbitant association fees [or] other liens or co-ownership interests").[5]

---

[5] As BNYM notes, <u>Rosa</u> and <u>Rose</u> are "the only two . . . published decisions to have considered the issue." BNYM's Opening Br. 11. In fact, the one other case relied on by the bankruptcy court was "an unpublished order from the Bankruptcy Court for the District of Massachusetts, <u>In re Gerardi</u>," which is now under

PAGE 12 - OPINION AND ORDER

Thus, in confirming a Chapter 13 plan that advanced non-consensual vesting in conjunction with surrender, the bankruptcy court read language into the Bankruptcy Code that does not exist, as well as frustrated the purpose of the statute, which is to provide protection to creditors holding allowed secured claims. See McDaniel v. Wells Fargo Invs., LLC, 717 F.3d 668, 677 (9th Cir. 2013) ("[u]nder the standard rules of statutory construction, [the court] will not read into the statute [language] that is not there") (citations and internal quotations omitted). Therefore, where, as here, a Chapter 13 plan includes a nonstandard term, irrespective of whether that term is permitted by another provision of the Bankruptcy Code, the first or second prong of 11 U.S.C. § 1325(a)(5) are activated. Rosa, 495 B.R. at 524-25; see also Chapter 13 Practice & Procedure § 5:9 ("a provision in a plan for surrender of encumbered property in full satisfaction of the claim is not permissible under Code § 1325(a)(5)(C) [b]ecause such a provision seeks to require the creditor to accept the encumbered property in satisfaction of its claim, [such that] it must meet the cramdown requirements of Code § 1325(a)(5)(B), unless the creditor accepts it under Code § 1325(a)(5)(A)").

Reading 11 U.S.C. § 1325(a)(5) in any other manner leads to an

reconsideration, such that debtors do not cite to that case on appeal. Id. at 25 n.8 (citations omitted); ER 128. Furthermore, Rosa involved nearly identical circumstances, except the secured creditor in that case accepted title to the real property at issue such that the bankruptcy plan was confirmable under the first prong of 11 U.S.C. § 1325(a)(5). Rosa, 495 B.R. at 523-25. Unlike the bankruptcy court, this Court finds Rosa to be both well-reasoned and persuasive.

PAGE 13 - OPINION AND ORDER

unreasonable result. Indeed, the bankruptcy court's interpretation impermissibly transforms the secured creditor's right into an obligation, thereby rewriting both the Bankruptcy Code and the underlying loan documents, while at the same time belying the secured creditor's state-created property rights. See ER 31-36 (DOT allows, but does not require, BNYM to take title to the Property through foreclosure); Thompson v. Bollinger, Hampton & Tarlow, 118 Or.App. 700, 710, 849 P.2d 526, rev. denied, 317 Or. 163, 856 P.2d 318 (1993) (under Oregon law, a court "may not read into a contract provisions that simply do not exist") (citation omitted); Lancaster v. May, 194 Or. 647, 655, 243 P.2d 268 (1952) (under Oregon law, a mortgagee must consent to the transfer of a deed to encumbered property); see also Butner v. United States, 440 U.S. 48, 55-56 (1979) ("[u]nless some federal interest requires a different result[,] the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued").

Significantly, debtors have not cited to, and the Court is not aware of, any authority holding, either directly or by analogy, that a bankruptcy plan proposing a present transfer of property rights is confirmable absent the secured creditor's consent. See generally Debtors' Opening Br.; Meritage's Opening Br. Case law, while limited, generally indicates that a secured creditor cannot be forced to accept surrendered property, even where post-petition costs, including those assessed by a HOA, continue to accrue. Rosa,

PAGE 14 - OPINION AND ORDER

495 B.R. at 523-25; <u>Rose</u>, 512 B.R. at 793-96; <u>see also</u> <u>In re</u>
<u>Holoka</u>, 525 B.R. 495, 499 n.38 (Bankr.N.D.Fla. 2014) (collecting
cases holding that "the Code does not provide for the court or the
debtor to direct the means by which the secured creditor deals with
the surrendered property") (citations and internal quotations
omitted); <u>Arsenault</u>, 456 B.R. at 629-30 ("a plan cannot require a
secured creditor to accept a surrender of property or take
possession of or title to it"); <u>In re Khan</u>, 504 B.R. 409, 410-14
(Bankr.D.Md. 2014) (granting a HOA's motion for relief from stay,
thereby enabling it to collect post-petition fees, while
recognizing that "none of the secured creditors has gone forward
with foreclosure, and Debtor cannot compel them to accept his
surrender pursuant to 11 U.S.C. § 1325(a)(5)(C)").

Finally, although the bankruptcy court was undoubtedly
motivated by equitable considerations - i.e. that BNYM, a large
corporation with considerable assets, should be required to bear
post-petition HOA costs instead of debtors, individuals faced with
a difficult financial situation, or "all the [other] homeowners in
Meritage" - the fact remains that such equity must comport with the
law.[6] ER 93, 124-30; <u>see also</u> <u>In re Concretize, Inc.</u>, 2009 WL

---

[6] Debtors assert repeatedly on appeal that a "balance must
be struck between the rights of creditors on the one hand, and
the policy of affording the debtor a fresh start on the other."
Debtors' Opening Br. 20 (citation and internal quotations
omitted). Their second amended plan, however, effectuated no such
balance; it wholly eliminated their financial responsibility in
relation to the Property, at the sole expense of a secured
creditor. See <u>Canning v. Beneficial Maine, Inc.</u>, 706 F.3d 64, 69-
73 (1st Cir. 2013) ("[a] fresh start [through a bankruptcy
allowing the surrender of collateral] does not mean debtors are
free from all of the consequence of every decision that they have

PAGE 15 - OPINION AND ORDER

3929890, *2 (Bankr.D.Or. Nov. 18, 2009) (11 U.S.C. § 105(a), the Bankruptcy Code's catch-all relief provision, "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity") (citations and internal quotations omitted); see also Rose, 512 B.R. at 795 (declining "to permit a debtor to transfer property to its mortgage lender by fiat" under 11 U.S.C. § 105(a)). As discussed herein, debtors' second amended plan was not confirmable under 11 U.S.C. § 1325(a)(5). The Court also notes that debtors are not without other remedies; as they initially proposed, and as BNYM advocated for at the hearing, the Property could be sold as part of the bankruptcy estate pursuant to 11 U.S.C. § 363(b). ER 4, 90.

### CONCLUSION

For the reasons set forth above, the bankruptcy court's order is VACATED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

Dated this 22ND day of April 2015.

Ann Aiken
United States District Judge

made, which in hindsight, might have been ill-advised [and] [n]or does it generally discharge the ongoing burdens of owning property").